NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 29

No. 24-AP-328

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Richard J. Chamberlin | November Term, 2025 |

John Treadwell, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and A. Alexander Donn, Appellate Defender, Montpelier, for Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Thibault, Supr. J., Specially Assigned


¶ 1. **COHEN, J.** Defendant Richard J. Chamberlin appeals a jury verdict convicting him of multiple counts of aggravated sexual assault and lewd or lascivious conduct with a child for acts committed against his child, V.E. Defendant argues that the court (1) erred in declining to dismiss Count Three, which alleged that defendant sexually assaulted V.E. at their home in Brattleboro, because the State's evidence was insufficient as a matter of law; (2) abused its discretion in admitting evidence of defendant's uncharged conduct in Massachusetts; (3) abused its discretion in permitting the State's witness to provide expert testimony about delayed reporting

of child sexual abuse; and (4) committed plain error by allowing the State to make impermissible comments during closing arguments. We affirm.

## I. Facts and Procedural History

¶ 2. The record reveals the following. In late 2018, V.E., then seventeen, disclosed to their pediatrician that their father, defendant Richard Chamberlin, had inappropriately touched them multiple times when they were younger. The Vermont State Police subsequently conducted an investigation, and, in October 2019, the State charged defendant with four counts of aggravated sexual assault, three counts of lewd or lascivious conduct with a child, and one count of lewd or lascivious conduct.

¶ 3. In an amended information filed in January 2024, the State reduced the charges against defendant to six felony counts with each charge based on the statutes that were in effect at the time of the acts. Count One alleged that defendant committed aggravated, repeated sexual assault against V.E. in Vernon, Vermont and/or Brattleboro, Vermont between 2004 and 2008 as part of defendant's common scheme and plan. Count Two alleged that defendant committed aggravated sexual assault against V.E. when they were under the age of ten in Vernon. Count Three alleged the same, but in Brattleboro and when V.E. was under the age of thirteen. Count Four alleged defendant committed lewd or lascivious conduct in Vernon with a child under the age of sixteen. Count Five alleged the same, but in Brattleboro. Finally, Count Six alleged defendant engaged in lewd or lascivious conduct in Brattleboro. All charges related to Vernon alleged defendant's conduct occurred between 2004 and March 2007, while all charges related to Brattleboro alleged defendant's conduct occurred between March 2007 and 2008. Prior to trial, the State dismissed Count One.[1]

---

[1] For purposes of this opinion, we refer to the counts as they were originally numbered in the State's January 2024 Amended Information.

¶ 4.     Leading up to trial, defendant filed two motions in limine to exclude: (1) evidence of defendant's alleged misconduct in Greenfield, Massachusetts towards V.E. under Vermont Rules of Evidence 403 and 404; and (2) testimony of the State's expert witness regarding V.E.'s delayed reporting and memory because she was unqualified to testify as an expert witness. The court denied these motions, concluding that the evidence from Massachusetts was relevant and not unduly prejudicial; and that the State's expert witness was qualified to testify, but must not present testimony that could be construed as a comment on V.E.'s credibility.

¶ 5.     The State presented the following evidence at trial in January 2024. V.E. lived with their mother and defendant in Vernon, Vermont until their parents divorced when they were about five or six years old. Defendant moved to Brattleboro, Vermont for about one year following the divorce while V.E. continued to live with their mother in Vernon. Defendant then moved to Greenfield when V.E. was seven. V.E. continued to visit defendant on weekends, but "stopped wanting to go" as they got older. When V.E. was twelve years old, defendant moved to Virginia. V.E. continued to briefly communicate with defendant when he was in Virginia but did not see him again until trial.

¶ 6.     V.E. testified that defendant digitally penetrated them when defendant was bathing them in their Vernon home. V.E. "felt like the world . . . stopped spinning," "felt . . . scared . . . more than confused," and "didn't know what was happening." Afterwards, V.E. hid from defendant in a closet. V.E. also testified that they remembered defendant digitally penetrating them in the bathtub in defendant's Greenfield apartment when they were between eight and ten years old.

¶ 7.     V.E. testified that they had a memory of stepping out of the shower with defendant in the Brattleboro home, "[b]ut . . . it's just black as to what happened" in the shower. V.E. stated that they remembered feeling mentally and physically similar to other instances when they were

3

digitally penetrated: "[M]entally . . . it was very similar . . . . [M]y mind was just rushing. I was so confused and scared . . . . [I]t hurt, yeah. . . . . I was sore . . . . My genitals." When asked whether defendant was always in the shower with them in Brattleboro, V.E. testified that "I have no memories of being in that shower by myself."

¶ 8. V.E. also testified that in Brattleboro and Greenfield, defendant engaged in other conduct such as staring at V.E.'s body, "spooning" V.E. while defendant was not wearing a shirt or pants, tickling V.E. so hard that it would leave bruises, "graz[ing] . . . [V.E.'s] butt . . . [a]nd . . . genitals," touching defendant's own genitals in front of V.E., and giving V.E. massages during which defendant "grab[bed] [V.E.'s] chest and . . . butt."

¶ 9. The State's expert testified on why victims of sexual abuse may disclose quickly, delay for years, or never disclose, and the factors influencing the timing and amount of a victim's disclosure. She also testified to the effect of trauma on memory and how memories get encoded and retrieved.

¶ 10. The jury found defendant guilty of Counts Two through Five and not guilty of Count Six. After trial, defendant filed a post-verdict motion for a judgment of acquittal on Count Three alleging there was insufficient evidence to support the verdict. He also moved for a new trial on seven different grounds, two of which are relevant here. Again, defendant argued that the court erred in admitting evidence of uncharged bad acts from Greenfield and allowing the State's expert witness to testify based on his earlier arguments. He further asserted that the state's expert witness's testimony did not comport with Vermont Rule of Evidence 702. The court denied these motions, referring to its previous orders and finding that the State's witness gave permissible expert testimony within the boundaries explained in its prior order. The court sentenced defendant to ten years to life for Count Three. The court imposed concurrent sentences of ten years to life for Count Two, four-to-five years for Count Four, and ten-to-fifteen years for Count Five.

¶ 11.  Defendant appeals his convictions and requests that this Court reverse and remand for a new trial.  Alternatively, defendant requests that this Court reverse and dismiss his conviction for Count Three and either order a new trial on the remaining counts or order a resentencing on those counts.

## II.  Insufficient Evidence on Count Three Argument

¶ 12.  Defendant argues that the trial court erred in declining to dismiss Count Three because the State's evidence was insufficient, as a matter of law, to prove beyond a reasonable doubt that he committed the crime of aggravated sexual assault in Brattleboro.  We conclude that there is sufficient evidence to support the jury's verdict.

¶ 13.  Prior to trial, the State disclosed to defendant that V.E. was unable to recall the details of the actual penetration for the sexual abuse that occurred while showering in Brattleboro.  Defendant moved to dismiss Count Three on the basis that V.E. was "unable to describe a sexual act that occurred in Brattleboro."  The trial court addressed defendant's motion as one for a judgment of acquittal and declined to grant the motion at that time, so the case proceeded to trial.

¶ 14.  Defendant renewed his motion for a judgment of acquittal after the State rested its case, at the conclusion of all the evidence, and in a post-trial motion.  The trial court denied defendant's motion, explaining that, when looking at the evidence in the light most favorable to the State, the evidence showed that defendant and V.E. showered together; V.E. had no specific memories of defendant not being in the shower with them; an incident happened in Brattleboro; and V.E. recalled getting out of the shower with defendant and having the same pain and physical sensations they had when they were digitally penetrated in Greenfield.  The court concluded that "the reasonable inference is that there was penetration of [V.E. in Brattleboro] in violation of the statute."

¶ 15.    We review the denial of a motion for judgment of acquittal de novo by "apply[ing] the identical standard as that employed by the trial court: we view the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Hale, 2021 VT 18, ¶ 8, 214 Vt. 296, 256 A.3d 595 (quotation omitted).  We use the same test to determine if there is sufficient evidence to support a conviction.  State v. Vaillancourt, 2025 VT 20, ¶ 16, ___ Vt. ___, 336 A.3d 439.  While applying this test, we keep in mind that "[w]e are not triers of fact, and we will not substitute our judgment for that of the jury." Id.; State v. Cameron, 2016 VT 134, ¶ 5, 204 Vt. 52, 163 A.3d 545 ("A jury is in the best position to weigh facts and deliver a verdict, particularly in close fact-dependent cases.").  As this standard accords substantial respect to the jury's fact-finding role, "courts should grant a judgment of acquittal only when there is no evidence to support a guilty verdict."  State v. Davis, 2018 VT 33, ¶ 14, 207 Vt. 346, 186 A.3d 1088 (quotation omitted).  Though evidence may lead to multiple interpretations, we do not "second-guess the interpretations of the jury," but rather "determine only whether the State's theory of the evidence could fairly support the conviction."  State v. Robitille, 2019 VT 36, ¶ 34, 210 Vt. 202, 213 A.3d 437 (quotation omitted).

¶ 16.    Circumstantial evidence can be sufficient to support "proof of guilt beyond a reasonable doubt, provided the evidence is proper and sufficient in itself."  State v. Durenleau, 163 Vt. 8, 12, 652 A.2d 981, 983 (1994) (quotation omitted).  The fact-finder "may draw rational inferences to determine whether disputed ultimate facts occurred," but these inferences "must add up to more than mere suspicion; the jury cannot bridge evidentiary gaps with speculation." Id. at 12-13, 652 A.2d at 983.

¶ 17.    Under the relevant charge, the State was required to prove that defendant engaged in a sexual act with a victim who "is under the age of 13 and the actor is at least 18 years of age."

6

13 V.S.A. § 3253(a)(8). Section 3251 defines a sexual act as "conduct between persons consisting of . . . any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another." 13 V.S.A. § 3251(1). A sexual act thus includes digital penetration of a victim. As explained in more detail below, necessarily taking the evidence in the light most favorable to the State, we conclude that there is sufficient evidence to support the jury's verdict convicting defendant of aggravated sexual assault in Brattleboro. See Hale, 2021 VT 18, ¶ 8 (explaining that this Court must "view the evidence in the light most favorable to the State" when reviewing denial of motion for judgment of acquittal (quotation omitted)).

¶ 18. Though V.E. testified that they did not remember what happened while in the shower itself, there was circumstantial evidence to demonstrate that an assault occurred and expert testimony explaining why V.E. may not have been able to recount the specifics of that assault. As to the circumstantial evidence, V.E. stated that they had a distinct memory of getting out of the shower with defendant in Brattleboro and felt similar mental and physical sensations as when defendant digitally penetrated them in Greenfield and Vernon. Specifically, V.E. testified that their genitals hurt upon leaving the shower with defendant and their mind was "rushing." Notably, V.E. also testified that when defendant penetrated them in Vernon and Greenfield the physical sensation each time was "the same" and "hurt a lot." V.E.'s testimony that each act of digital penetration resulted in the same physical sensation supports the jury's finding that defendant also digitally penetrated V.E. in Brattleboro. Moreover, the State's expert witness testified regarding the effect of trauma on the encoding and retrieval of memory, explaining that "in a traumatic [event], you may remember certain parts that get encoded, but it may not be the salient parts that are important."[2] When taking in the light most favorable to the State, this expert testimony

---

[2] Because we conclude that the trial court did not abuse its discretion in admitting V.E.'s testimony—regarding defendant's conduct in Greenfield to provide context for V.E.'s allegations,

7

supports the inference that a traumatic event happened in the shower in Brattleboro, and impacted V.E.'s ability to recall memories of their time in the shower with defendant. Because this circumstantial evidence and expert testimony was sufficient to support the jury's finding that defendant engaged in a sexual act with V.E. on this occasion, the trial court did not err when it denied the judgment of acquittal. See State v. Johnson, 2013 VT 116, ¶ 26, 195 Vt. 498, 90 A.3d 874 ("A judgment of acquittal is proper only if the prosecution has failed to put forth any evidence to substantiate a jury verdict." (emphasis added)).

¶ 19. Defendant contends that because the incident took place during bathtime and V.E. "had sensitive skin and was allergic to most soaps," there was a reasonable possibility that any contact by defendant was accidental, and any soreness was due to V.E.'s skin sensitivity. Thus, the evidence did not prove beyond a reasonable doubt that defendant digitally penetrated them. This assertion is not supported by the evidence. V.E. testified that their dermatitis, and allergies to liquid soap, did not start until "[a]bout two years" before trial. Thus, V.E.'s pain upon leaving the shower with defendant could not have been caused by their dermatitis. Moreover, "the State is not required to exclude every reasonable hypothesis of innocence in proving a case with circumstantial evidence." State v. Vuley, 2013 VT 9, ¶ 35, 193 Vt. 622, 70 A.3d 940 (quotation omitted). Even if V.E.'s pain might have been caused by soap or accidental contact by defendant, we will not call into question the jury's interpretations of the evidence—evidence we have already determined is sufficient to support defendant's conviction. See Robitille, 2019 VT 36, ¶ 34 ("Although the evidence may be susceptible to multiple interpretations, not all of which point

_____

explain their delay in reporting the abuse, and rebut defendant's claims of fabrication—and the State's expert witness's testimony regarding the effects of trauma, we rely on this evidence to address defendant's argument here. See infra, ¶¶ 25-26, 36; see also Durenleau, 163 Vt. at 12, 652 A.2d at 983 (explaining that circumstantial evidence can be sufficient to support guilty verdict, but evidence itself must be proper).

toward guilt, it is not our role to second-guess the interpretations of the jury." (quotation omitted));

see also State v. Norton, 134 Vt. 100, 103, 353 A.2d 324, 326 (1976) ("The credibility of the

witnesses and the weight to be given their testimony is the sole province of the jury.").

### III. Uncharged Bad Acts

¶ 20. Defendant argues that the court erred in admitting V.E.'s testimony about the

alleged bad acts in Greenfield, Massachusetts, asserting that this was inadmissible propensity

evidence under Vermont Rule of Evidence 404(b) and unfairly prejudicial in violation of Vermont

Rule of Evidence 403. We conclude the trial court did not abuse its discretion by allowing V.E.

to testify regarding defendant's conduct in Greenfield.

¶ 21. This Court will only reverse the trial court's decision to admit evidence if it

"withheld or abused its discretion and a substantial right of the defendant was affected by the

alleged error." State v. Lipka, 174 Vt. 377, 390, 817 A.2d 27, 38 (2002) (quotation and alterations

omitted). Our review of the trial court's admission of prior bad act evidence under Rule 404(b)

involves two steps: first, we look at "whether the evidence was relevant and material to the cause

of action, and if so, whether its admission was more probative than unfairly prejudicial." State v.

McAllister, 2018 VT 129, ¶ 21, 209 Vt. 60, 202 A.3d 989 (quotation omitted).

¶ 22. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove
> the character of a person in order to show that the person acted in
> conformity therewith. It may, however, be admissible for other
> purposes, such as proof of motive, opportunity, intent, preparation,
> plan, knowledge, identity, or absence of mistake or accident.

This Court has explained that "in sexual assault cases, particularly those involving the family

member of a minor[,] Rule 404 permits the admission of evidence regarding uncharged conduct to

show a pattern of misconduct towards the victim," State v. Menize, 2023 VT 48, ¶ 23, 218 Vt.

374, 308 A.3d 507 (alterations and quotation omitted), and "to explain the context of delayed

9

reporting or to refute claims of fabrication," State v. Brown, 2010 VT 103, ¶ 7, 189 Vt. 88, 15 A.3d 107. This Court has recognized that "[a]llegations of a single act of sexual contact between parent and child, taken out of its situational context of secrecy, oppression, and recurrence, are likely to seem incongruous and incredible." State v. Forbes, 161 Vt. 327, 331, 640 A.2d 13, 15 (1993).

¶ 23. The State provided notice that it intended to offer evidence of defendant's Greenfield misconduct, which defendant subsequently moved to exclude. The State filed a response in opposition to defendant's motion explaining that it sought to offer the evidence to show defendant's overall scheme or plan, explain V.E.'s reporting delay, and provide context. The trial court denied defendant's motion, explaining that V.E. could testify to the alleged bad acts in Greenfield for the three purposes requested by the State. Quoting our decision in State v. Menize, the court determined that the evidence was admissible as context to "show a pattern of misconduct towards the victim." 2023 VT 48, ¶ 23 (quotation omitted). The court further explained that the proffered evidence was "directly relevant" to an element of Count One, which alleged defendant engaged in a common scheme and plan to sexually assault his child, by showing that defendant continued to engage in sexual acts with V.E. outside of Vermont. Additionally, the court explained that the evidence was relevant to explain V.E.'s delay in disclosing the abuse because "[i]n the absence of evidence establishing [d]efendant's alleged criminal acts were ongoing, a jury would be left with the impression that the alleged acts had ceased without explanation and without reference to the date of the report." The court cautioned the State not to introduce "substantial testimony" about uncharged misconduct due to the danger of unfair prejudice.

¶ 24. At trial, defendant again objected to V.E.'s testimony regarding uncharged conduct in Greenfield. The court overruled these objections, explaining that even though the State

10

dismissed Count One, which alleged a common scheme and plan, its order was still supported by other grounds.

¶ 25. The trial court did not abuse its discretion by allowing evidence of defendant's prior bad acts in Greenfield. Though the State dismissed Count One, which charged defendant with "repeated nonconsensual acts as part of [a] common scheme and plan," the Greenfield conduct was still admissible to show context for V.E.'s allegations of sexual abuse and to rebut defendant's claims of fabrication. V.E. testified that when they visited defendant's Greenfield apartment, defendant asked if V.E. wanted him to wash their privates and they agreed because they trusted him. V.E. testified that defendant "penetrated [them] with his fingers." V.E. also testified about other conduct in Greenfield including that defendant would stare at V.E.'s body, defendant did not allow V.E. to shut or lock the bathroom door, defendant shared a bed with V.E., and defendant would "spoon" V.E. and grab and touch V.E.'s body in ways "sexual in nature, that made [V.E.] uncomfortable."

¶ 26. The State introduced this testimony to show defendant's pattern of misconduct towards V.E., which continued outside Vermont when defendant moved to Greenfield. Though there was not a "single act of sexual contact" between V.E. and defendant, the Greenfield acts still provided relevant and material context for this pattern of abuse of both digital penetration and lewd and lascivious conduct. Menize, 2023 VT 48, ¶ 23 (quotation omitted). Defendant's acts in Vernon and Brattleboro could have seemed incredible if jurors thought defendant's sexual contact had suddenly ceased even though V.E. continued to visit defendant for multiple years in Greenfield. See Forbes, 161 Vt. at 332, 640 A.2d at 16 ("Jurors may believe that fathers ordinarily do not molest their daughters only once and that the child must not be telling the truth without evidence of a pattern."). As we explained in State v. Forbes, under Rule 404(b) "the trial court[]

11

[has] discretion to allow the victim to tell enough of the story to preserve its integrity as a credible one." 161 Vt. at 333, 640 A.2d at 16.

¶ 27. Defendant asserts that the Greenfield conduct cannot serve as context for the charged acts because it occurred after the charged conduct, and the acts in Brattleboro and Vernon already demonstrated a pattern of abuse. Defendant's argument ignores that future conduct can provide context for past conduct. In State v. Anderson, defendant was charged with sexual assault on a minor and asserted that uncharged acts in the months following the charged incident were inadmissible propensity evidence. 2005 VT 17, ¶¶ 1, 4, 178 Vt. 467, 868 A.2d 716 (mem.). This Court held that the subsequent acts were admissible under Rule 404(b), explaining they provided a broader context and "there is no reason that conduct occurring after an assault cannot similarly demonstrate a pattern of sexually abusive behavior." Id. ¶¶ 9-10. Defendant's Greenfield acts similarly reveal the broader context of the charged conduct and "demonstrate a pattern of sexually abusive behavior." Id.

¶ 28. The trial court acted within its discretion in determining that the Greenfield conduct was also admissible to at least partly explain V.E.'s delay in reporting. The State's expert witness explained multiple factors that affect a child's delay reporting sexual abuse, sometimes for years. These include whether the nonoffending parent is supportive, whether the child fears hurting or disrupting the family, especially if the offender is a parent, and whether the child lacks the language to meaningfully communicate what is happening to them. Here, V.E. was sexually abused by their father when they were very young and did not have the language to communicate what defendant was doing. When V.E. "worked up the courage" to talk with their mother about the abuse at the age of eight or nine, when defendant was living in Greenfield, they described it as "tickling." In response, mother explained that "it was probably an accident" and she did not want to "get in between" V.E. and defendant. V.E. testified that they felt "rejected," "crushed," and "invalidated"

12

as a result. Though V.E. did not formally report the sexual abuse until five years after defendant moved from Greenfield to Virginia, the continued sexual abuse by their father in Greenfield provides an additional explanation and context for V.E.'s delay in reporting the abuse.

¶ 29. Defendant asserts the State did not "precisely" show what purpose the bad act evidence was supposed to provide once the State dropped Count One asserting a common scheme or plan. See State v. Winter, 162 Vt. 388, 393, 648 A.2d 624, 627 (1994) (explaining that when seeking to admit uncharged misconduct evidence under Rule 404(b), "[t]he State has the burden to show precisely how the proffered evidence is relevant to the theory advanced"). The State sufficiently explained that the Greenfield evidence provided necessary context for the charged sexual abuse—context that, if omitted, would distort the truth—and to help explain V.E.'s delayed reporting of the abuse, both of which this Court has allowed. See, e.g., Forbes, 161 Vt. at 331, 640 A.2d at 15 (explaining that uncharged sexual abuse was admissible because "history of defendant's incestuous relationship with his daughter . . . supplied the context within which the charged incidents of sexual contact occurred"); Brown, 2010 VT 103, ¶ 7 (allowing evidence of defendant's paddling of victim to help explain victim's fear and delayed disclosure). The trial court did not abuse its discretion in admitting the evidence for these permissible purposes.

¶ 30. Moreover, the court did not abuse its discretion in determining that the danger of unfair prejudice did not outweigh V.E.'s testimony's probative value under Rule 403. Rule 403 states that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." V.R.E. 403. "Unfair prejudice arises from evidence whose primary purpose or effect is to appeal to a jury's sympathies and which may cause a jury to base its decision on something other than the established propositions in the case." Menize, 2023 VT 48, ¶ 26 (quotation omitted). As explained above, V.E.'s testimony regarding defendant's Greenfield acts had substantial probative value for the purpose of providing context for defendant's

pattern of abuse against V.E. and V.E.'s delayed disclosure. The primary effect of this testimony was not to appeal to the jury's sympathies.

¶ 31. The record does not support defendant's assertion that the Greenfield testimony was particularly prejudicial because it took up a "fairly significant part of the trial." During their testimony, V.E. briefly talked about the incident of digital penetration in Greenfield and the physical sensation, which they then compared to their experience in Brattleboro. V.E. also discussed defendant's other sexual misconduct in Greenfield, including touching V.E.'s butt and genitals and staring at V.E.'s body; however, while testifying about Greenfield, V.E. explained that most of this sexual misconduct occurred in Brattleboro as well. Thus, V.E.'s testimony regarding the acts in Greenfield was brief and related directly to the charged conduct in Brattleboro. The State complied with the trial court's instruction and did not "present substantial testimony regarding uncharged misconduct that may raise a danger of unfair prejudice." We therefore conclude that the trial court acted within its discretion in determining that evidence was not unfairly prejudicial and admitting it.

¶ 32. Defendant also asserts that the trial court committed plain error because it did not deliver a limiting instruction regarding the uncharged bad acts. Vermont Rule of Criminal Procedure 26(c) states:

> When evidence of other criminal offenses is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered. After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information.

A defendant must request a limiting instruction or object to the absence of one to properly preserve an issue regarding Rule 26(c) on appeal. State v. Holcomb, 156 Vt. 251, 256, 590 A.2d 894, 897 (1991). At trial, defendant did not request an instruction or object and therefore we review for

plain error. See State v. Waters, 2013 VT 109, ¶ 16, 195 Vt. 233, 87 A.3d 512 ("Because defendant did not object to the court's jury instructions at trial, our review on appeal is limited to plain error.").

¶ 33. "Plain error review of jury instructions assesses the instructions as a whole to determine if they breathe the true spirit of the law, and if there is no fair ground to say that the jury has been misled." Id. (quotation omitted). Plain error occurs "[i]f (1) there is an error; (2) the error is obvious; (3) the error affects substantial rights and results in prejudice to the defendant; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. Defendant's burden to show plain error is extremely high, and we have rarely found plain error for failing to provide a limiting instruction even when there is evidence of prior bad acts. State v. Turner, 2003 VT 73, ¶ 15, 175 Vt. 595, 830 A.2d 122.

¶ 34. The circumstances here did not amount to plain error. As explained, the uncharged bad acts were not admitted to show defendant's propensity to commit sexual misconduct, but to provide context for his pattern of abuse towards V.E. and to at least partly explain V.E.'s delay in reporting; the State presented V.E.'s testimony in line with these purposes. Additionally, the trial court made clear in its jury instructions that defendant was charged for conduct occurring in Vernon and Brattleboro—not in Greenfield. When viewing the instructions as a whole, we cannot say that the jury was misled. See Waters, 2013 VT 109, ¶ 16 (explaining that this Court reviews jury instructions as whole to determine if they are true to law and do not mislead jury). Each charge included the place where the conduct occurred, either Vernon or Brattleboro, and the court explained that the jurors were required to find the elements of each count "on the date and at the place alleged." This Court "presume[s] that the jury followed the court's instructions," State v. McCarthy, 2012 VT 34, ¶ 17, 191 Vt. 498, 48 A.3d 616, and found defendant guilty of his conduct in Vermont, not Massachusetts. Though it would have been better practice to include a limiting

15

instruction to the jury to guide their consideration of the uncharged conduct, the lack of a limiting instruction did not amount to plain error in this context.

¶ 35.    Defendant has also not demonstrated the prejudice prong of the plain-error analysis. Defendant asserts that he was prejudiced because the jury was allowed to consider evidence that he engaged in uncharged bad acts that were similar to the charged acts.  To the extent that the uncharged Greenfield incident may have been used for impermissible propensity purposes in regards to Count Three, that risk was limited by the jury's independent finding beyond a reasonable doubt that defendant also digitally penetrated V.E. in Vernon.  Therefore, any limiting instruction was unlikely to impact the jury's decisionmaking.[3]

¶ 36.    Defendant points to Vermont's Model Criminal Jury Instructions as an example of a model limiting instruction that the trial court should have used and the existence of which, defendant asserts, shows the potential prejudice that arises from bringing in uncharged bad acts. However, as defendant acknowledges, the trial court was not obligated to use the model instruction and defendant did not request that it do so.  The lack of a limiting instruction here does not constitute plain error.

_____

[3]  The dissent primarily relies on State v. Corliss, 149 Vt. 100, 539 A.2d 557 (1987), to support the assertion that the trial court must provide a limiting instruction under the plain meaning of Rule 26, regardless of whether an objection was made, as long as the uncharged act was similar to the charged offense.  Post, ¶ 62 note 5.  First, it is not evident from the analysis in Corliss whether the defendant in that case requested an instruction at trial because preservation was not discussed in the opinion.  Moreover, Holcomb subsequently made clear that there is no per se error and a defendant must request a limiting instruction to preserve an issue regarding Rule 26(c). Holcomb, 156 Vt. at 256, 590 A.2d at 897 ("Since Corliss, we have reiterated that a defendant must request a limiting instruction or object to the jury charge given in order to preserve the issue."); see also id. at 254, 590 A.2d at 895 (explaining that creating categories of errors that are plain per se is "bad policy").  Because defendant did not request an instruction at trial, we review for plain error.  For the reasons stated above, defendant has not met his burden of demonstrating plain error because he cannot demonstrate that he was prejudiced from the court's failure to provide a limiting instruction.

## IV. Expert Testimony

¶ 37. Defendant argues that the trial court erred in allowing the State's witness to provide expert testimony, asserting she was unqualified to offer an expert opinion regarding delayed disclosure in sexual abuse cases. Defendant contends that she had not conducted any original research regarding delayed disclosure and recantation, and a psychologist would have been a more appropriate expert to testify in this situation. We conclude that the trial court did not abuse its discretion when it allowed the State's expert witness to testify.

¶ 38. The State brought in an expert witness to testify regarding whether, when, and what child victims of sexual abuse will disclose, and how sexual abuse affects a victim's memories. The State's witness was a "Licensed Independent Clinical Social Worker" with a master's and Ph.D. in social work. She did not have any original research but had read each study she referenced in her testimony several times and explained that she stayed up to date on current research regarding how victims report sexual abuse. She had also worked directly with child victims of sexual abuse through her work as a social worker.

¶ 39. The trial court found that she was qualified based on multiple factors, including her experience conducting psychological testing and studying under a psychologist; her background as a Licensed Independent Clinical Social Worker; her many years conducting Department for Children and Families assessments on alleged child-abuse victims, and her experience contracting with the Defender General on matters involving alleged child-abuse victims. Based on her qualifications, the trial court determined that the State's expert witness could speak to "the profile of young sexual assault victims and whether the particular complainant fits the profile [which] may greatly assist the jury in performing its duty to assess the credibility of the complaining witness." State v. Hazelton, 2009 VT 93, ¶ 16, 186 Vt. 342, 987 A.2d 915. However, she could not offer testimony that was "tantamount to a direct comment that the complainant [is] telling the

truth about the alleged sexual assault." Id. The trial court explained that testimony regarding delayed disclosures, in general, was allowed.

¶ 40. The trial court's decision of whether to admit expert testimony is within the court's discretion and will be affirmed unless "discretion has been abused or withheld and prejudice has resulted." State v. Sullivan, 2017 VT 24, ¶ 27, 204 Vt. 328, 167 A.3d 876 (quotation omitted). "When reviewing a trial court's decision to either admit or exclude expert testimony we consider whether the judge's decision was either made for reasons clearly untenable or was unreasonable." USGen New England, Inc. v. Town of Rockingham, 2004 VT 90, ¶ 24, 177 Vt. 193, 862 A.2d 269. "Absent a clear showing of judicial error, we will affirm the trial court's decision to admit or exclude the proffered testimony." Sullivan, 2017 VT 24, ¶ 27.

¶ 41. Rule 702 of the Vermont Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This Court has explained that "our rule is substantively identical to the federal rule and codifies the factors set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), which established the preeminent standard for admissibility of expert testimony." Sullivan, 2017 VT 24, ¶ 25. The court acts as a gatekeeper of expert testimony to ensure that the testimony is reliable and relevant. Id. Trial courts must "balance the Daubert factors with their broad discretion to determine, on a case-by-case basis, whether some or any of the factors are relevant to evaluating the reliability of expert evidence before the court." Id. ¶ 26 (quotation omitted).

¶ 42. This Court has long acknowledged the need for expert testimony to help jurors understand why a child victim of sexual assault may delay reporting and to be able to better assess the credibility of the victim. See, e.g., State v. Hammond, 2012 VT 48, ¶ 31, 192 Vt. 48, 54 A.3d 151 ("We assume that familiarity with delayed and inaccurate reporting of sexual assault is not a subject within the ken of most jurors."); State v. Leggett, 164 Vt. 599, 599, 664 A.2d 271, 271 (1995) (mem.) ("The role of an expert in child sexual assault cases is to help jurors understand the emotional antecedents of the victim's conduct so that they may be better able to assess the credibility of the complaining witness." (quotation omitted)); State v. Hicks, 148 Vt. 459, 462, 535 A.2d 776, 777 (1987) ("The behavioral patterns of child victims of sexual abuse are generally not known to the average juror and are therefore a proper subject for expert testimony"); State v. Catsam, 148 Vt. 366, 370, 534 A.2d 184, 187 (1987) ("The unique psychological effects of sexual assault on children place the average juror at a disadvantage in understanding the behavior of the victim."). However, we have also "disapproved of expert testimony that is tantamount to a direct comment that the complainant [is] telling the truth about the alleged sexual assault." Hazelton, 2009 VT 93, ¶ 17 (quotation omitted).

¶ 43. The trial court did not abuse its discretion when it allowed the State's expert witness to testify regarding memory and delayed disclosures. The State's expert was qualified to offer expert testimony through her education, training, and experience. See V.R.E. 702 (explaining that witness can be qualified as expert "by knowledge, skill, experience, training, or education"). She had a master's degree and Ph.D. in social work, had trained in psychological testing under a psychologist, and had extensive experience working with child-abuse victims. Though defendant asserts that a psychologist would have been a more appropriate expert witness to testify about factors influencing delayed disclosure by sexual abuse victims, this Court has allowed social workers to testify about delayed disclosure in the past. See Hicks, 148 Vt. at 461-62, 535 A.2d at

19

777 (allowing expert testimony regarding behavioral patterns of child sexual abuse victims by expert witness with "B.A. in elementary education and a master's degree in social work with specialization in children" and who had been employed as children's social worker helping children who reported sexual abuse). We are not persuaded that the trial court abused its discretion by determining that the State's expert witness's testimony was both reliable and relevant. See Sullivan, 2017 VT 24, ¶ 29 (explaining that relevant standard under Rule 702 is whether testimony is relevant and reliable and that "trial court has broad discretion to determine, on a case-by-case basis, whether to admit expert testimony").

¶ 44. Defendant also asserts that the trial court erred when it stated that the situation did not involve the third requirement of Rule 702, "the witness has applied the principles and methods reliably to the facts of the case." This argument misinterprets the court's statement and overlooks the limitations placed on expert testimony regarding delayed disclosure of child sexual abuse victims. This Court has made clear that "experts in child sexual abuse cases are not permitted to comment directly on their personal perceptions or beliefs regarding the credibility of the child victim." Leggett, 164 Vt. at 599, 664 A.2d at 271. Therefore, the State's expert here appropriately did not apply her knowledge about delayed reporting to V.E.'s situation and therefore avoided commenting on V.E.'s credibility as required for experts testifying on child sexual abuse. Moreover, despite the court's statement that it was not applicable, the record shows that the expert did apply the principles and methods supporting her opinion to the facts of this case. The expert testified regarding the factors that could influence why a child sexual abuse victim might delay disclosure, including the familial relationship between child and abuser, the responsiveness of the nonoffending parent, and the victim's youth and ability to understand and explain what is happening to them. These factors provided context for why a victim like V.E. would delay disclosure, without vouching for V.E.'s credibility. Thus, the trial court's statement that "Rule

20

702(3) is inapplicable" did not amount to error in the context of this case and the court did not abuse its discretion by allowing the State's expert witness to testify.

## V. Prosecutorial Statements

¶ 45. Defendant claims that the prosecutor made comments during closing arguments that improperly vouched for V.E.'s credibility, shifted the burden of proof to defendant, and elicited sympathy for V.E. After reviewing the prosecutor's statements, we conclude that they do not amount to the plain error required to justify reversing defendant's convictions or remanding for a new trial.

¶ 46. Because defendant did not object to these statements, we review them for plain error. State v. Riva, 145 Vt. 15, 19, 481 A.2d 1060, 1063 (1984). "[A] finding of plain error is supported only when the defendant establishes that the prosecutor's closing argument was not only improper, but also that it impaired the defendant's right to a fair trial." State v. Rehkop, 2006 VT 72, ¶ 37, 180 Vt. 228, 908 A.2d 488 (alteration and quotation omitted). This Court will only reverse if the prosecutor's comments "strike[] at the heart of defendant's constitutional rights or result[] in a miscarriage of justice." State v. Atherton, 2016 VT 25, ¶ 29, 201 Vt. 512, 144 A.3d 311 (quotation omitted). In determining whether a statement during closing argument amounted to plain error, we look at factors such as "the frequency of the improper argument, whether the remark was inflammatory and attacked defendant's character, and whether the court gave curative instructions." State v. Martel, 164 Vt. 501, 506, 670 A.2d 845, 849 (1995) (citations omitted).

¶ 47. This Court has consistently stated that counsel may not insert their personal beliefs regarding a defendant's guilt during closing statements. Riva, 145 Vt. at 20, 481 A.2d at 1063; see also State v. Ayers, 148 Vt. 421, 425, 535 A.2d 330, 333 (1987) (collecting cases condemning prosecutorial statements representing personal belief of defendant's guilt). "Counsel may, however, point out what the evidence shows and the inferences that can be made from the

21

evidence." Riva, 145 Vt. at 20, 481 A.2d at 1063. "Whether a closing argument . . . exceeds the bounds of propriety as to produce reversible error must be determined in the context of the entire argument . . . and . . . [t]he burden of proving prejudice is on the defendant." State v. Bailey, 144 Vt. 86, 100, 475 A.2d 1045, 1054 (1984).

¶ 48. Defendant first challenges two of the prosecutor's statements as vouching for V.E.'s credibility. The prosecutor stated that "there's nothing that defendant is able to present to you explaining why it is that [V.E.] comes in and says these things other than that that's the truth. That's what occurred." He further stated that "[V.E.] came in here to tell you what happened because that's what happened."

¶ 49. Defendant likens the prosecutor's statements to those in State v. Ayers. In Ayers, the prosecutor made several statements in their closing argument indicating they did not believe the defendant's version of events, but believed the victim was telling the truth. 148 Vt. at 424-25, 535 A.2d at 333. This Court concluded that the prosecutor's statements expressing their personal beliefs were plain error and warranted reversal. The Court explained that there is "great risk that the jury will give special weight to [the prosecutor's personal opinion] because of the prestige of the prosecutor and the fact-finding facilities available to the office." Id. at 425-26, 535 A.2d at 333. This Court concluded that the prosecutor's improper statements constituted plain error because the comments were repeated multiple times in a short closing argument; the defendant was without counsel; and, because the credibility of the witnesses was central to the case, the prosecutor's opinion on who was telling the truth "could have determinative weight for the jury." Id. at 425-26, 535 A.2d at 333-34.

¶ 50. The prosecutor's statements here are distinguishable from those in Ayers. The prosecutor's statements were permissible comments on the state of the evidence, including how the evidence showed V.E.'s truthfulness, and did not express a personal belief or opinion about

22

V.E.'s credibility or defendant's guilt. See Riva, 145 Vt. at 20, 481 A.2d at 1063 (explaining that counsel may comment on what evidence shows and possible inferences from evidence). Because these statements were not personal comments on the state of the evidence, there was no error, let alone plain error.

¶ 51. Defendant also asserts that the following statement crossed the line by shifting the burden of proof to the defense: "[T]here's just no evidence in this record to explain why it is that [V.E.] would make a report of this nature and stick with this process and come into this courtroom and explain to you what happened." Additionally, defendant argues that the prosecutor reinforced this argument by stating: "[T]here's nothing that defendant is able to present to you explaining why it is that [V.E.] comes in and says these things other than that that's the truth. That's what occurred." These statements do not rise to the level of plain error. Defendant relied on the theory that V.E. fabricated defendant's acts of sexual misconduct to seek attention because they were a "troubled kid" and felt abandoned by their father after he moved to Virginia and remarried. Defendant also asserted that the allegations stemmed from V.E.'s nightmares, which distorted their memories. In closing, the prosecutor made these statements in response to defendant's assertions of fabrication. Because the comments were merely a recitation of what the evidence showed, they were not in error.

¶ 52. Even if the prosecutor's statements could be construed as improperly suggesting to the jury that defendant had the burden of proving why V.E. would make a false report of sexual abuse, any harm was cured by the court's subsequent instructions. The court explained that the attorneys' opening and closing arguments were not evidence, the conviction must be based solely on the evidence, and the State bore the burden of proof to prove each element of the crimes charged beyond a reasonable doubt. See Martel, 164 Vt. at 506, 670 A.2d at 849 (explaining that comments made during State's closing argument did not amount to plain error partly because of court's

23

instruction to jury that counsel's argument was not evidence and conviction must be based wholly on evidence).

¶ 53. Defendant also asserts that the prosecutor improperly elicited sympathy for V.E. by saying that they "did the bravest thing that they could under the circumstances, talking to you about what happened to them." This Court has condemned prosecutorial statements that are inflammatory or that appeal to the sympathies of the jury. State v. Bubar, 146 Vt. 398, 403, 505 A.2d 1197, 1200 (1985). Here, the prosecutor's statement was not inflammatory. Instead, it was a permissible argument as to V.E.'s credibility and comment on the difficulty that victims of sexual assault face when presenting their story during a public proceeding. See id. at 403, 505 A.2d at 1200 (concluding that prosecutor's question to jury if it had "given any thought to how difficult it was for her to sit up here and do what she did" by testifying was "permissible argument as to credibility"). The prosecutor's argument was also supported by the testimony of the State's expert witness, who explained how difficult it can be for victims of sexual assault to disclose the abuse perpetrated on them.

¶ 54. Finally, defendant asserts that the prosecutor mischaracterized the evidence regarding Count Three by stating, "[V.E.] remembers the physical sensation of that occurring but doesn't remember the specific act." Defendant argues that V.E. did not remember anything "occurring" in the shower in Brattleboro; they testified that what happened in the shower had "blanked from [their] mind" and that their genitals were "sore" after they left the shower. In making this statement, the prosecutor was describing the evidence and highlighting an inference that could be drawn from it. See Riva, 145 Vt. at 20, 481 A.2d at 1063 (explaining that during closing arguments counsel may refer to inferences that can be made from evidence). Even if this was a mischaracterization of the evidence, this statement does not amount to plain error. As stated

24

above, the trial court made clear when instructing the jury that the attorneys' closing arguments were not evidence and the conviction must be based wholly on the evidence.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 55. **THIBAULT, Supr. J., Specially Assigned, dissenting.** I join the majority on all issues except for the conclusion that there was sufficient evidence to support the conviction on Count Three. The trial court's failure to provide a limiting instruction regarding the Greenfield incident constitutes plain error under the circumstances of this case. Without consideration of the Greenfield incident evidence for impermissible propensity purposes, an insufficient quantum of evidence remains to sustain the conviction. Thus, the lack of appropriate and necessary instructions to the jurors on the use of such evidence cannot be viewed as harmless beyond a reasonable doubt. Accordingly, I respectfully dissent in part.

¶ 56. I agree with the trial court and majority decision's conclusion that evidence of the Greenfield bathtub incident was admissible for some purposes. Specifically, I agree that "[d]efendant's acts in Vernon and Brattleboro could have seemed incredible if jurors thought defendant's sexual contact had suddenly ceased even though V.E. continued to visit defendant for multiple years in Greenfield." Ante, ¶ 26. However, the trial court and majority decision both skirt the essential question of how the incident could properly be used as "context" evidence by the jury.

¶ 57. Prior to trial, the State sought admissibility of the evidence under three theories: (1) as part of the context in which the events allegedly occurred; (2) as part of a common scheme

and plan; and (3) to explain delay in reporting of the alleged offenses. The court denied defendant's motion to exclude the evidence, reasoning that "[b]eyond admissibility as context, the evidence is additionally directly relevant to an element of the charge in Count 1—that Defendant had a common scheme and plan to engage in nonconsensual sexual acts with his child." With the dismissal of Count One prior to trial, no remaining charge expressly alleged a common scheme or plan by defendant. This left the trial court's other rationales for admissibility—for purposes of "context" and to explain the delay in reporting. However, the trial court did not articulate any limitations as to the incident's consideration for these purposes, despite expressing concern that, should the State "present substantial testimony regarding uncharged misconduct," unfair prejudice could result. During trial, defendant again objected to testimony concerning the Greenfield incident, and the court overruled each objection.

¶ 58. Vermont has not adopted an evidentiary rule that would affirmatively allow for the categorical use of evidence of uncharged acts of child sexual abuse in child-molestation cases. In some jurisdictions, such evidence is broadly admissible and may be used for any purpose. For example, Federal Rule of Evidence 414(a) provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Several states have adopted similar provisions. Mich. Comp. Laws Ann. § 768.27a; Mo. Const. art. I, § 18(c); Va. Sup. Ct. R. 2:413.

¶ 59. In Vermont, by contrast, admission of such evidence is governed by Rule 404(b). This Court's prior case law interpreting that rule requires that evidence of other acts of child sexual abuse must be offered on more narrow and particularized grounds. For example, in State v. Menize and State v. Forbes, we explained that in sexual assault cases where the defendant is the family member of a minor, Rule 404 allows the admission of evidence of uncharged conduct to show a

pattern of misconduct, because otherwise the victim's delayed reporting or an allegation of a single act may seem incredible to the factfinder. See State v. Menize, 2023 VT 48, ¶ 26, 218 Vt. 374, 308 A.3d 507 (holding Rule 404 permitted admission of testimony regarding four separate prior acts to show defendant engaged in pattern of conduct against victim, including making intimidating statements about killing her mother if she disclosed behavior); Forbes, 161 Vt. 327, 333, 640 A.2d 13, 16 (1993) (holding testimony regarding past uncharged instances of incest to "allow the victim to tell enough of the story to preserve its integrity as a credible one"); see also State v. Brown, 2010 VT 103, ¶ 7, 189 Vt. 88, 15 A.3d 107 (holding Rule 404 permitted evidence that defendant hit victim and her sister with paddle because it helped explain delay between sexual assault and victim's reporting of incident); State v. Anderson, 2005 VT 17, ¶ 8, 178 Vt. 467, 868 A.2d 716 (explaining that Rule 404 permitted admission of evidence of uncharged conduct to show pattern of intimidation and sexually possessive behavior toward minor victim). This is consistent with the policy purposes of a rule intended to exclude evidence of prior acts when introduced for the purpose of showing a general propensity to commit the act or acts in question. See State v. Parker, 149 Vt. 393, 397, 545 A.2d 512, 515 (1988) (discussing origins and purpose of Rule 404).

¶ 60. Evidence offered to provide context or establish a pattern of conduct, without a discrete and identified purpose tied to the facts of the case, is often no more than propensity evidence under a different name. While I agree that the Greenfield evidence was admissible for the specific purposes of demonstrating that defendant did not suddenly cease his behavior after moving, and to partly explain V.E.'s delay in reporting the abuse, it was critical for the trial court to instruct the jurors regarding these purposes to avoid impermissible use as propensity evidence.[4]

---

[4] This court has narrowly drawn the parameters of admissibility for other-acts evidence relating to pattern or characteristics of behavior, sometimes referred to as "signature crime" evidence, to circumstances where identity is at issue. See, e.g., State v. Bruyette, 158 Vt. 21, 27-28, 604 A.2d 1270, 1273 (1992) ("[t]he 'pattern and characteristics' of the prior acts must be so

27

Cloaking admissibility under the broad construct of "context evidence," as in the trial court's ruling and the majority, does not address the core issue, which is that without any form of instruction to the jurors, the use of the evidence is effectively unbounded. This invites the precise ill that Vermont Rule of Evidence 404(b) and Vermont Rule of Criminal Procedure 26(c) seek to avoid: impermissible propensity evidence filling evidentiary gaps that could otherwise contribute to a reasonable doubt.

¶ 61. The jurors should have been instructed that the Greenfield incident could be considered for limited purposes consistent with the trial court's rulings. Admission of the evidence without limitation permitted the jurors to reason that because abuse had occurred in Greenfield it must also have happened in Brattleboro. The risk and prejudice of the evidence being used in such manner was amplified because of V.E.'s inability to recall or articulate a specific sexual act occurring in Brattleboro.

¶ 62. In my view, the trial court's failure to give such an instruction constituted plain error. Because we assume juries follow limiting instructions as issued by trial courts, State v. Amidon, 2018 VT 99, ¶ 23, 208 Vt. 360, 198 A.3d 27, the absence of an instruction may present the same peril as disregard of a proper instruction. Vermont Rule of Criminal Procedure 26(c) provides: "[a]fter the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information." (Emphasis added). "[T]he plain meaning of V.R.Cr.P. 26(c) clearly requires the trial court to give the jury limiting instructions upon the close of evidence." State v. Corliss, 149 Vt. 100, 104, 539 A.2d 557, 560 (1987). We have held, however, that "the failure to give a limiting instruction under V.R.Cr.P. 26(c), in the absence of a

_____

distinctive, in effect, to constitute the defendant's signature."). While identity is not at issue here, the similarity of the conduct was.

request or objection, will be grounds for reversal only on a finding of plain error." State v. Holcomb, 156 Vt. 251, 256, 590 A.2d 894, 897 (1991).[5] "Plain error will be found only in rare and extraordinary cases where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Hendricks, 173 Vt. 132, 137, 787 A.2d 1270, 1275 (2001) (quotation omitted); see also State v. Waters, 2013 VT 109, ¶ 16, 195 Vt. 233, 87 A.3d 512 (stating plain error occurs "if (1) there is an error; (2) the error is obvious; (3) the error affects substantial rights and results in prejudice to the defendant; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.").

¶ 63.    In State v. Corliss, a burglary prosecution in which the State presented evidence of another burglary to show plan and motive, the trial court failed to instruct the jury on the limited purpose for which the evidence was admitted. We reversed, holding that such an instruction was clearly required by Rule 26(c). Corliss, 149 Vt. at 104, 539 A.2d at 560. By contrast, in State v. Holcomb, we held that the trial court did not commit plain error in failing to give a limiting instruction to the jury regarding evidence that the defendant, who was charged with lewd and lascivious conduct, offered to pay another person fifty dollars to beat up the victim. 156 Vt. at 256, 590 A.2d at 897. We reasoned that the court gave a general instruction that the defendant was not on trial for any uncharged act, and the uncharged bad act was entirely different from the charged conduct, creating no risk that the jury would use it as evidence of the defendant's propensity to commit that crime. Id. We distinguished Corliss, explaining that in that case "the

---

[5]  Holcomb imputed a preservation requirement on Rule 26(c) that is not provided for in its express language. Corliss and Holcomb are in harmony with one another if the court's affirmative duty to instruct only applies to circumstances where the uncharged act is similar to the charged offense, but not to circumstances where the uncharged act is collateral to the nature of the charge. In the latter circumstance, a strictly applied preservation requirement that a defendant must request a final jury instruction may unnecessarily constrict defendants' appeal rights in cases where a defendant has objected to the evidence and the court has issued a ruling that limits the purposes for which the evidence may be considered.

uncharged bad act was another burglary so there was a risk that the jury would use the evidence to show a predisposition or character trait directly related to the charged crime." Id.

¶ 64.    In my view, Corliss controls here, because the uncharged Greenfield incident was essentially identical to the act charged in Count Three, creating a risk that the jury would view it as evidence of defendant's propensity to commit the charged offense. The State relied upon V.E.'s testimony concerning the Vernon incident and Greenfield incident to meet its burden in Count Three. Ascertaining the relative weight the jurors gave to the two incidents would be wholly speculative. Hearing the details of an additional sexual act would tend to be memorable to the jurors during their deliberations, and apt to invoke or enhance emotional responses to the evidence.

¶ 65.    Upon excising consideration of the Greenfield incident, I am not satisfied that the remaining quantum of evidence is sufficient to sustain the conviction. The evidence is speculative: V.E. was unable to articulate at trial that defendant committed a sexual act in Brattleboro, or that any sexual conduct occurred for that matter. Instead, the jury could only connect the dots by reliance, in part, on the uncharged conduct. See State v. Durenleau, 163 Vt. 8, 12-13, 652 A.2d 981, 983 (1994) (stating that reasonable inferences "must add up to more than mere suspicion; the jury cannot bridge evidentiary gaps with speculation").

¶ 66.    Defendant objected to testimony concerning the Greenfield incident directly and indirectly through a motion to dismiss prior to trial, and renewed his objection at trial. These efforts compelled the trial court to repeatedly articulate the grounds of admissibility and appropriate use by the factfinder. But without limiting instructions to the jury, the court's orders had virtually no meaningful effect because the jurors were not limited in any manner as to how they could consider the evidence. The risk and prejudice to defendant was substantial because there was no requirement to find that the Greenfield incident occurred beyond a reasonable doubt, the conviction for Count Three could not be sustained without that evidence. I am not persuaded

that the general instructions provided by the court requiring satisfaction of the essential elements were sufficient to mitigate the risk. See <u>Corliss</u>, 149 Vt. at 104 (holding trial court erred in failing to give limiting instruction regarding evidence of uncharged burglary).

¶ 67.    Based on my view that the failure to provide a limiting instruction is plain error and is not harmless beyond a reasonable doubt, I respectfully dissent in part.

¶ 68.    I am authorized to state that Justice Waples joins this dissent.


_____
Superior Judge